David L. FREED, Daniel G. Freed and Peter Freed, d/b/a Freed Finance Company, a partnership, Plaintiff,

v.

INLAND EMPIRE INSURANCE COMPANY, an Idaho corporation, Defendant,

Leo O'Connell, Commissioner of Insurance of the State of Idaho, Defendant and Intervenor,

G. A. Bushnell, Receiver of Trans-Pacific Insurance Company, Intervenor.

CONTINENTAL BANK & TRUST COMPANY, Receiver of Inland Empire Insurance Company, Petitioner,

v.

LEWIS, ROCA, SCOVILLE & BEAUCHAMP, a partnership, Respondent.

No. C-157-55.

United States District Court
D. Utah,
Central Division.
May 7, 1959.

Calvin L. Rampton and David K. Watkiss (of Pugsley, Hayes, Rampton & Watkiss), Salt Lake City, Utah, for petitioner.

John P. Frank, Phoenix, Ariz., pro se, and for other respondents.

CHRISTENSON, District Judge.

In June, 1956 the law firm of Lewis, Roca, Scoville & Beauchamp, hereinafter referred to as claimants or partners, filed a claim against the receiver herein based upon a judgment recovered in cause No. 85,446 in the Superior Court, Maricopa County, Arizona, on October 6, 1955. From an order of this Court approving such claim as a general rather than a preferred one, the claimants successfully prosecuted an appeal, the Circuit Court holding that the claim should have been allowed as a preferred claim. Lewis, Roca, Scoville & Beauchamp v. Inland Empire Ins. Co., 10 Cir., 1958, 259 F.2d 318.

Thereafter, believing that such order complied with the mandate, this Court allowed the claim as preferred but withheld immediate payment pending the disposition of a petition for judgment against the claimants for alleged damages of $300,000 filed by the receiver in the meantime in reliance upon the doctrine of Alexander v. Hillman, 296 U.S. 222, 56 S.Ct. 204, 80 L.Ed. 192. This petition of the receiver, in the nature of a counterclaim, was based upon allegations of fraud and breach of fiduciary duty claimed to have been committed by members of the partnership in the course of their representation as officers, directors and attorneys of Inland Empire Insurance Company prior to the receivership herein. Freed v. Inland Empire Ins. Co., D.C.D.Utah 1958, 166 F.Supp. 873.

In ruling on a petition for writ of mandamus directed to this Court, the Circuit Court held that it was within the intent of the mandate on the former appeal, in view of the prior stipulation of

the parties concerning procedure, that immediate payment be made. Lewis, Roca, Scoville & Beauchamp v. Christenson, 10 Cir., 1959, 263 F.2d 536. Accordingly, payment of the preferred claim forthwith was directed by this Court without reference to the receiver's pending petition for judgment against the claimants.

' While the claimants had argued in the mandamus proceedings that this court had no jurisdiction to entertain the petition for judgment against them, the Circuit Court expressly declined to pass upon this question, stating (at page 538), "We decline to determine in this proceeding any issues relating to the receiver's 'petition for judgment'."

After payment of the claim, the claimants not having answered or otherwise responded to the receiver's petition for judgment against them, the receiver filed a "Petition for Default Judgment or Order Requiring Responsive Pleading" with reference to its claim against the partners. Due notice was given to the partners of the time of the hearing of this motion. At the time set, no one appeared for them but one of them had addressed a letter to the clerk of the court containing "suggestions", among other things, that the court lacked jurisdiction and that the petition of the receiver did not state a claim upon which relief could be granted. The Court at the time noticed for the hearing refrained from entering any default, but on May 2, 1959, did enter the following "Order Requiring Responsive Pleading":

"The petition for default judgment or order requiring responsive pleading filed by the Continental Bank & Trust Company, receiver for Inland Empire Insurance Company in the above proceeding came on regularly for hearing before the Court on the 9th day of February, 1959 at the hour of 9:30 a. m. and was thereafter continued for hearing to the hour of 2:00 p. m. on the 12th day of February, 1959. The court having heard the arguments of counsel and having considered the matter, and it

appearing to the court that the law firm of Lewis, Roca, Scoville & Beauchamp of Phoenix, Arizona on or about the 18th day of June, 1956 filed a general claim with the receiver of Inland Empire Insurance Company and it further appearing that on or about the 22 day of October, 1958 Continental Bank & Trust Company as receiver of Inland Empire Insurance Company filed a document entitled Petition for Judgment against the said Lewis, Roca, Scoville & Beauchamp, which petition for judgment was in effect a counterclaim; and it further appearing to the court that the said law partnership of Lewis, Roca, Scoville & Beauchamp has not made an answer or other responsive pleading to said petition for judgment, but it further appearing to the court that it would not be in the interest of justice and equity to enter the default at the present time without further notice to said partnership but that the said Lewis, Roca, Scoville & Beauchamp should be afforded a further opportunity to answer or otherwise plead to the petition for judgment, if it now be so advised, both with respect to any factual question on which it believes the jurisdiction of this court may depend, and with reference to the merits of said counterclaim.

"Now, Therefore, It Is Hereby Ordered that Lewis, Roca, Scoville & Beauchamp, a partnership, be and they are hereby granted until 20 days after notice of the entry of this Order in which to answer or otherwise plead to the counterclaim entitled Petition for Judgment heretofore filed in the above entitled matter by Continental Bank & Trust Company as receiver for Inland Empire Insurance Company.

"It Is Further Ordered that in default of an answer or other pleading within the time herein allowed, the default of Lewis, Roca, Scoville & Beauchamp, a partnership, will be entered and Continental Bank &

Trust Company as receiver for Inland Empire Insurance Company will be permitted to introduce evidence before the court in support of said counterclaim, including evidence concerning the circumstances under which the original claim of said partnership was filed herein as going to the question of the court's jurisdiction to entertain a counterclaim thereto.

"It Is Further Ordered that notice of the entry of this Order shall be made by Continental Bank & Trust Company as receiver for Inland Empire Insurance Company by mailing a certified copy of this Order by registered mail to the said Lewis, Roca, Scoville & Beauchamp."

Within twenty days allowed on this order, the following papers were served and filed by the partnership:

"Affidavit of Prejudice of Judge and Certificate of Good Faith and Application," executed by John P. Frank, one of the partners.

"Affidavit" by Paul M. Roca, another partner.

Unsigned "Motion to Dismiss Petition for Judgment" and unsigned memorandum in support thereof.

"Motion to Certify to the Court of Appeals."

The allegations of the above mentioned affidavits will be further referred to hereinafter. For the present, it may be noted that they are concerned primarily with what the attorney for the receiver more than two years ago is claimed to have said about what the judge was supposed to have said about the prosecution of the present or a similar petition by the receiver. The attorney for the receiver has filed an affidavit denying that the claimed statement was made by him.

It is provided in 28 U.S.C. § 144 as follows:

"§ 144. Bias or prejudice of judge.

"Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

"The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. [June 25, 1948, c. 646, 62 Stat. 898] As amended May 24, 1949, c. 139, § 65, 63 Stat. 99.

■ The law is well settled that if application, affidavit and certificate are sufficient to meet the requirements of this statute, the judge has no alternative but to recuse himself or to refer the question of his qualification to another judge; but if the application and affidavit are insufficient on their face to invoke such action, it is not only the judge's right but his duty to proceed with the case. Scott v. Beams, 10 Cir., 1941, 122 F.2d 777; In re Federal Facilities Realty Trust, D.C. N.D.Ill.E.D.1956, 140 F.Supp. 522.

■■ It is not for the judge to pass upon the truth or falsity of the averments of the affidavits. Scott v. Beams, supra. Hence, the affidavit of the attorney for the receiver denying the claimants' assertions may not be considered in determining the legal sufficiency of the "Affidavits of Prejudice". Nor, for the purpose of this discussion, will we look to the matters within knowledge of the judge or even other matters of record that may throw light upon the truth or falsity of the averments of the claimants. We will look solely to the affidavits of the partners as they appear in the file.

The only "facts" set out or claimed in Mr. Frank's affidavit to support his con-

clusions or belief that "the judge has a personal bias and prejudice against the partnership" may be summarized as follows:

1. That on an occasion some two years ago the attorney for the receiver stated to a member of that firm that the judge was personally pressing for the institution of this or some similar action. As far as Frank's affidavit is concerned, he does not define any particular statement he claims to have heard personally. He indicates that one of his associates said that the attorney for the receiver said that the judge said that such action should be instituted. He then adds that he himself heard "similar" statements by the attorney for the receiver in May, 1957.

2. Frank refers to prior rulings of the judge on legal issues before him as an indication of prejudice, or "As illustration of the absence of that open-mindedness to which a litigant should be entitled." He specifically refers to a statement made by the Court at the hearing on the question of whether a responsive pleading should be required from the partners that "If the allegations of the petition are true, the receiver would be entitled to relief."

· In the latter connection it seems clear that it was the Court's duty before ordering a default or a responsive pleading from the partners on the motion of the receiver, to consider whether the receiver's petition against the partnership stated a claim on which relief could be granted. Yet, the exercise of this duty of inquiry at a hearing of which the partners were given notice but from which they voluntarily absented themselves, is cited as proof of personal prejudice. The affiant ignores entirely the further fact of record that despite his voluntary absence the Court, instead of entering any default, allowed additional time for a responsive pleading and indicated that it would welcome any information from the partnership going to the jurisdiction of the court or other legal problems involved in the case.

The only other matter referred to in Frank's affidavit is an alleged declaration by the Court that " * * * he regards himself as having given adequate leave to file the alleged counterclaim by some implication or assumption (proceedings, February 12, 1959), despite the fact that no motion for leave to file was ever served and the partnership was thereby never given an opportunity to resist the filing of the alleged counterclaim as untimely and improper."

When it became my duty to tentatively consider whether it would be reasonable for the partnership to be expected to file a responsive pleading (at which time, as indicated, I did not have the benefit of the oral arguments of counsel for the partnership but only an indirect "suggestion" addressed to the clerk of the court) it was my duty to consider whether the absence of formal leave to file should end the proceedings without the necessity of any answer or motion on the part of the partners. I stated:

"With regard to the problem of leave to file, it does seem to me that that would not be jurisdictional.

"If any prejudice will be suffered by reason of insuring formal leave, should that appear regular and proper, leave could be granted on terms, or conditioned otherwise; or the pleading could be stricken; but it hardly appears reasonable in view of this, the course of this proceedings in respect of the partnership claim, or in respect of other similar matters, to make a rejection or entertainment of the receiver's petition at this time depend upon some technical failure to obtain leave.

"I really must confess in good conscience that the problem of leave hadn't occurred to me in this or related matters where counterclaims in effect were asserted by the receiver against claimants who had filed general claims in the matter. I just assumed that that would be the natural and authorized action to be expected of the receiver if the coun-

terclaim was believed to exist in this particular case.

"I, of course, was conscious of the fact that the claimant was seeking a review of the denial of its motion for payment in the court of appeals.

"Whether I expressly ruled upon the matter or not, I'm sure it came to my attention by way of explanation, among other things, for the delay in considering this petition of the receiver for judgment against the partnership by way of rejoinder or response to the claim.

"My recollection is that it was represented to me that Mr. Frank was otherwise occupied in connection with this appeal and that there was no real reason why that matter should not be so marked delayed. At least, I tacitly agreed to that.

"Theretofore, in ruling upon the motion for immediate payment, I have taken notice of this pending proceeding, and in fact based my denial of the motion for immediate payment expressly upon a recognition of the fact that this petition had been filed, and with an express indication that I thought it proper that the issues which it would raise in connection with any denial should be investigated and ruled upon before payment was made.

"If there were any way to grant leave by clear implication, yet effectively short of saying in terms, 'Leave is hereby granted,' I suppose that would be the way, because the contested issue of payment was determined by me on the supposition that matter was before me and should be resolved before the payment was made. Theretofore there had been no withdrawal of the original claim filed by the partnership. Theretofore there had been no motion of the partnership to strike the claim on the ground that leave hadn't been granted and that it wasn't authorized; and to this time there has been no such motion or suggestion, even in the so-called suggestion that has been filed." (Transcript of hearing on February 12, 1959 on "Petition for Default Judgment or Order Requiring Responsive Pleadings", pp. 30–32).

An examination of the entire transcript will indicate that full right was then accorded, and is still open, to the partnership to urge any legal ground in opposition to the petition. There was nothing to preclude the partners from moving to strike the petition for alleged failure to obtain leave to file, nor is there anything yet done in the case precluding them from raising any valid legal objection. But those are matters that must be finally decided when issues of law or fact are framed with respect to them. Until that is done, the Court could only tentatively decide those points which were necessary to determine whether it should proceed in the matter at all, which decisions the transcript, I believe, will show were fairly and considerately made only to the extent and only in the manner contemplated by law in view of the partners' failure to file any objection or pleading. It seems somewhat far-fetched for them now to infer that their failures disempowered the Court to proceed at all, or, if it did proceed, accomplished an automatic disqualification of the judge for "personal prejudice" by reason of his entertainment of the legal view that he was authorized to proceed at all.

The affidavit of Mr. Roca adds little to the affidavit of Mr. Frank. The hearsay of Mr. Roca's affidavit is only one step removed from Mr. Frank's hearsay upon hearsay. Mr. Roca refers to a claimed conference on January 1, 1957, at which it is not even suggested that the judge was present but at which the attorney for the receiver is alleged to have stated to the affiant that the judge had on a number of occasions insisted to him that in his capacity as counsel for the receiver in the above captioned cause he " * * * should proceed to file an action against affiant and his partners on account of matters growing out of their connection

with said Inland Empire Insurance Company."

■ The matters alleged in the affidavits, taken at their full face value, either separately or in combination, fall far short of alleging or indicating any personal prejudice on the part of the judge. If it were to be assumed that the Court some two years ago had brought to its attention circumstances with regard to the claimed loss suffered by the Inland Empire Insurance Company as a result of alleged actionable fraud, I think that it would not have shown any personal bias or prejudice for the Court to indicate that some action should be taken to test the charges in the manner provided by law. Indeed, if the Court under such circumstances would have taken the position that no investigation or determination should have been pursued by a receiver having a duty to collect the assets of the receivership estate, it would really seem that bias might more appropriately then have been suggested. But the affidavit does not even allege that the Court actually knew of the matter or did anything with respect to it until it regularly came before it after notice to the partners. In effect, the partners would raise such an implication by the rankest kind of hearsay. Such hearsay ordinarily would not be received in evidence as against a litigant, much less as a basis for disqualification of a judge.

■ To warrant disqualification of a judge the affidavit of bias and prejudice must contain more than mere conclusions, but must plead facts showing his personal bias and prejudice. Inland Freight Lines v. United States, 10 Cir., 1953, 202 F.2d 169; Scott v. Beams, supra.

■ A judge is obligated to remove himself only in the face of an affidavit setting forth a personal bias or prejudice as distinguished from a judicial predilection obtained from the hearing of a case. Gallarelli v. United States, 1 Cir., 1958, 260 F.2d 259.

■ A trial court is not disqualified where the allegation is but complaint of the adverse rulings made by the court and subjective conclusions as to court's motives and manner in conducting trial and subsequent hearings. Palmer v. United States, 10 Cir., 1957, 249 F.2d 8.

■ A judge's rulings derived from judicial determination of facts in each case, together with his reasons in support of rulings, are subject to attack only on appeal and not upon filing of motion to disqualify. In re Federal Facilities Realty Trust, supra.

■ The disqualification statute is directed to personal bias and not to previous judicial exposure to the same or similar question. Denis v. Perfect Parts, Inc., D.C.D.Mass.1956, 142 F.Supp. 263. See also Scott v. Beams, supra.

■ There is another matter concerning which I would not make any point did not the affidavits so patently lack merit. The only "certificate of counsel" is that of a party who apparently appears for himself and his partnership. It was probably in order to avoid unjustified attempts of a party to disqualify a judge that the statute requires a certificate of good faith not from the interested party but from counsel of record. Mr. Frank, who signed the certificate of good faith is not a member of the bar of this court. Other counsel who acted during the early stages of litigation concerning the claims of the partners and who are respected members of the bar of this court, have not signed the purported certificate of merit. We will be happy to have Mr. Frank appear, and leave is hereby granted for him to appear as he desires in the representation of his partners and pro se. But the point is that the certificate of a person interested as a party hardly assures the type of responsible proceedings for asserted disqualification that the statute contemplates. The statute authorizing disqualification of a trial judge for personal bias or prejudice against one party or in favor of the opposite party is remedial, but due to its

nature and opportunity of abuse of such privilege, strict compliance with its provisions is exacted. Scott v. Beams, supra. The stated belief in an affidavit of prejudice against a judge is that of the defendant, but the good faith certified to in the certificate required by counsel, includes the good faith of counsel. United States v. Gilboy, D.C.M.D.Pa. 1958, 162 F.Supp. 384.

 The latest turn of this case reveals a path that has not had to be walked before by the writer during almost five years on the bench. It, no doubt, is one of the burdens of being a judge to encounter it from time to time. It leads between the dangerous rocks of claimed prejudice on the one hand, and on the other, the bottomless crevice into which a judge would throw himself and the administration of his office if, without legal cause, he would yield to the proposition that his impersonal view of the law disqualified him because interpreted as a personal affront by an apprehensive or disappointed litigant entertaining different views. In this case, I am confident that the path to a fair and expeditious disposition of the matter by me is not blocked under any proper view. Accordingly, the application for disqualification is denied by reason of the obvious insufficiency of the showing on its face.

 The motion of the partnership to "Certify to the Court of Appeals" is denied. I know of no such procedure in the present posture of the case. An order denying disqualification is not appealable. If it were, in this case I would hardly be in a position to certify that there was any real question concerning the insufficiency of the showing made by the partners on the question of disqualification, believing that there is not. But such a ruling can be reviewed upon the appeal of either a final or interlocutory order which itself is appealable. Collier v. Picard, 6 Cir., 1956, 237 F.2d 234. Here, we have neither such a final or an appealable interlocutory order. A motion to dismiss, being the first issue concerning the receiver's petition which has been appropriately raised by the partners, is now pending, it having been filed at the time of the filing of the application for disqualification. The latter matter having been now disposed of, the next step is to rule upon this motion to dismiss. Before that ruling is made, a hearing will be had at which time the partners or their attorneys or both will have the opportunity to be present to argue the matter fully. Indeed, I would welcome their full views on the important legal questions involved, as well as those of any counsel who may appear for them and of the receiver's counsel. To this end, all interested parties may take notice that the hearing on the pending motion will be on June 1, 1959 at 10 o'clock a. m. or as soon thereafter as the parties or counsel can be heard. If this motion to dismiss is granted, I do not assume that the partners will desire to appeal. If it be denied, I would be inclined as I indicated during the hearing on the receiver's motion for default or responsive pleading, to facilitate application for an interlocutory appeal so that the problem of jurisdiction could be finally resolved before any extended trial. Until, if at all, a ruling on the pending motion is made, the partners' "Motion to Certify to the Court of Appeals" is difficult to understand, unless it were intended to impress the Court prospectively, which it does not.

In concluding, perhaps I should qualify the statements made above that the partners' pending motion is the first question herein which has been appropriately raised. That motion and the brief in support thereof, while having typed in at their close under blank lines the words "John P. Frank, 900 Title & Trust Building, Phoenix, Arizona," do not bear the signature of Frank or anyone else. I will assume that in filing the motion he was the one who prepared it and caused it to be filed and was acting in good faith and that the failure to sign was a mere inadvertence. Accordingly, it is suggested that at or prior to the time of hearing of the motion, it be signed as required by the Federal Rules of Civil Procedure, rules 7(b)(2) and 11, 28 U.S.C.